# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| In re:<br><br>FRANK HOEHL MENEFEE, JR., and<br>WANDA LIPSCOMB MENEFEE,<br><br>Debtor. | Case No. 11-37204-KRH<br>Chapter 7 |
| WANDA LIPSCOMB MENEFEE,<br><br>Plaintiff,<br><br>v.<br><br>TEXAS GUARANTEED STUDENT LOAN CORPORATION,<br><br>Defendant. | Adv. Pro. No. 17-04542-KRH |

## MEMORANDUM OPINION

On November 13, 2011, Wanda Lipscomb Menefee (the "Debtor") and her husband, Frank Hoehl Menefee, Jr., filed a voluntary petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code")[1] in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (this "Court"). On December 15, 2011, the Chapter 7 trustee issued a report of no distribution, thereby declaring the bankruptcy case a no-asset case. On February 15, 2012, the Debtor and her husband each received a Chapter 7 discharge and the case closed shortly thereafter.

---

[1] All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq*.

Over five years later, in October 2017, the Debtor reopened her bankruptcy case.[2] On November 14, 2017, the Debtor filed this adversary proceeding (the "Adversary Proceeding") seeking a determination that repayment of her student loan debt to Texas Guaranteed Student Loan Corporation ("Texas Guaranteed" and, together with the Debtor, the "Parties")[3] is an undue hardship and, thus, her student loans should be discharged pursuant to section 523(a)(8) of the Bankruptcy Code.[4]

On September 11, 2018, the Court conducted a trial in this Adversary Proceeding. Upon consideration of the evidence and argument presented at the trial and in light of binding Fourth Circuit precedent, the Court now determines that the Debtor failed to establish an undue hardship as required to discharge her student loan obligations. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law.[5]

The Court has subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

---

[2] Although the Motion to Reopen was uncontested, it does not appear that Texas Guaranteed received notice of the Motion. *See* Motion to Reopen Bankruptcy, *In re Menefree*, No. 11-37204-KRH (Bankr. E.D. Va. Sept. 19, 2017), ECF No. 17. A Chapter 7 trustee was not appointed in the reopened bankruptcy case. *See* Fed. R. Bankr. P. 5010.

[3] Initially, the Complaint named Navient Funding, LLC ("Navient") and the Department of Education ("DOE") as defendants. DOE was not a creditor of the Debtor and Navient acted only as servicer for the student loan debt held by Texas Guaranteed. In light of the foregoing, the Debtor, Texas Guaranteed, Navient, and DOE agreed to dismiss Navient and DOE as defendants and substitute Texas Guaranteed as a defendant. *See* Consent Order Dismissing Currently Named Defendants and Adding Texas Guaranteed Student Loan Corporation as a Defendant in this Adversary Proceeding, ECF No. 9.

[4] At the trial, the Parties stipulated that the debt owed by the Debtor to Texas Guaranteed is a student loan or loans that would otherwise be nondischargeable absent a finding of undue hardship pursuant to section 523(a)(8) of the Bankruptcy Code.

[5] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

Under section 523(a)(8) of the Bankruptcy Code, a student loan, such as the debt owed by the Debtor to Texas Guaranteed, is nondischargeable "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). Thus, the definition of "undue hardship" is central to this Court's determination as to whether the debt should be discharged.

The Fourth Circuit has adopted the Second Circuit's *Brunner* test. *Educ. Credit Mgmt. Corp. v. Frushour* (*In re Frushour*), 433 F.3d 393, 400 (4th Cir. 2005) (citing *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987) (per curiam)). Pursuant to the *Brunner* test, in order for a debtor to discharge student loan obligations, the debtor must show:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396.

The Debtor argues that *Brunner* has been statutorily overruled by the amendments to the Bankruptcy Code implemented by the Bankruptcy Abuse Prevention & Consumer Protection Act of 2005 ("BAPCPA") and, as such, the *Brunner* test is inapplicable to the case at bar. The Debtor argues that the definition of "undue hardship" contained in section 524(m) of the Bankruptcy Code applies to a determination of "undue hardship" under section 523(a)(8) of the Bankruptcy Code.[6]

---

[6] BAPCPA made many significant changes to the Bankruptcy Code. Not only did it add section 524(m), but also it amended section 523(a)(8) to broaden the types of student loan obligations that were not subject to discharge absent proof of undue hardship. The nature of the lender was no longer relevant. Thus, even loans from "for-profit" and "non-governmental" entities were made nondischargeable.

3

The Debtor is correct that it is a recognized principle of statutory construction that "identical words used in different parts of the same act are intended to have the same meaning." *Comm'r. v. Lundy*, 516 U.S. 235, 250 (1996) (internal citations omitted). However, this principle does not apply where "the words, though in the same act, are found in such dissimilar connections as to warrant the conclusion that they were employed in the different parts of the act with different intent." *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 87 (1934).

The Debtor's argument fails for a number of reasons. First, the Debtor's argument ignores the express language of section 524(m) of the Bankruptcy Code, which provides:

> it shall be presumed that *such agreement* is an undue hardship on the debtor if the debtor's monthly income less the debtor's monthly expenses as shown on the debtor's completed and signed *statement in support of such agreement* required under subsection (k)(6)(A) [of section 524] is less than the scheduled payments on the reaffirmed debt.

11 U.S.C. § 524(m)(1) (emphasis added).[7] Subsection (k)(6)(A) details the requirements for a debtor's statement in support of a reaffirmation agreement. *See id.* § 524(k)(6)(A).[8] A presumption of undue hardship exists if the form budget required for reaffirmation agreements indicates a negative monthly cash-flow. Section 524(k)(6)(A) does not apply in a proceeding to determine the dischargeability of a student loan debt. As subsection (k)(6)(A) does not apply outside the context of reaffirmation agreements, the definition of the presumption included in section 524(m)(1) is inapplicable to section 523(a)(8).

Second, while *Brunner* may have pre-dated BAPCPA, *Frushour* did not. BAPCPA was enacted April 20, 2005. *See* BAPCPA, Pub. L. No. 109-8, 119 Stat. 23 (Apr. 20, 2005).

---

[7] Assuming arguendo that this definition of "undue hardship" were applicable to this case, the student loans still would be nondischargeable. The Debtor failed to offer any evidence at the hearing as to the Debtor's monthly income, the Debtor's monthly expenses, and the scheduled payments on the debt. Without such evidence, the Court cannot make a finding that an undue hardship exists.

[8] The debtor must demonstrate an ability to make the payments on the reaffirmed debt by subtracting the debtor's actual current monthly expenses from the debtor's monthly take-home pay. 11 U.S.C. § 524(k)(6)(A).

*Frushour* was not argued until September 20, 2005 and not decided until December 30, 2005, months after the enactment of BAPCPA. 433 F.3d 393. Accordingly, the Fourth Circuit's decision in *Frushour* post-dates BAPCPA and, as such, cannot have been statutorily overturned by the enactment of BAPCPA months earlier. The Fourth Circuit could have incorporated the definition of "undue hardship" in section 524(m)(1) at the time it decided *Frushour*, but the Fourth Circuit chose not to do so.[9]

In light of the binding Fourth Circuit precedent, the Court must apply the *Brunner* test to determine whether the Debtor's student loan obligations to Texas Guaranteed may be discharged. The Debtor bears the burden of proving each of the three *Brunner* factors by a preponderance of the evidence. *Greene v. U.S. Dep't of Educ.* (*In re Greene*), 484 B.R. 98, 108 (Bankr. E.D. Va. 2012), *aff'd,* No. 4:13CV79, 2013 WL 5503086 (E.D. Va. Oct. 2, 2013), *aff'd*, 573 F. App'x 300 (4th Cir. 2014).

Given the amount of time that has elapsed since the original bankruptcy filing in 2011 and the commencement of this Adversary Proceeding in 2017, a threshold issue is whether the Court should consider the Debtor's financial situation as it existed during the pendency of the underlying bankruptcy case or as of the time of this Adversary Proceeding. The Court agrees with the rationale set forth in *Zygarewicz v. Educ. Credit Mgmt. Corp.* (*In re Zygarewicz*), 423 B.R. 909 (Bankr. E.D. Cal. 2010) and *Bugos v. MIT Bursar's Office* (*In re Bugos*), 288 B.R. 435 (Bankr. E.D. Va. 2003). In both instances, the bankruptcy courts determined that the circumstances causing the alleged undue hardship must have arisen prior to the entry of the discharge. *See In re Zygarewicz,* 423 B.R. at 912; *In re Bugos*, 288 B.R. at 437 (denying motion

---

[9] Notably, since 2005, the Fourth Circuit has reaffirmed its opinion in *Frushour*. *See, e.g., Spence v. Educ. Credit Mgmt. Corp.* (*In re Spence*), 541 F.3d 538 (4th Cir. 2008); *Educ. Credit Mgmt. Corp. v. Mosko* (*In re Mosko*), 515 F.3d 319 (4th Cir. 2008).

to reopen "on undue hardship for circumstances that arose after the filing of the petition and that were not foreseeable at that time"). Accordingly, the Debtor is bound by the facts that existed or were reasonably foreseeable at the time of her discharge in 2012.[10]

For the Debtor to satisfy the first factor, the Debtor must establish by a preponderance of the evidence that she "cannot maintain, based on her current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." *Brunner*, 831 F.2d at 396. In support of her position, the Debtor testified as to her monthly income and expenses at the time of the bankruptcy filing as reflected on her schedules and statements.[11] The Debtor testified that at the time of the bankruptcy filing, the household consisted of herself, her husband, her daughter, and her mother-in-law. The Debtor further testified that as of the time of the bankruptcy filing, her daughter was completely disabled (and continues to be so) and her mother-in-law showed signs of early onset dementia. This evidence alone is insufficient to carry the Debtor's burden as to the first of the *Brunner* factors. The Debtor must show that she is unable to maintain a minimal standard of living based on her current income and expenses if she is required to make the student loan payments. The Debtor failed to provide any evidence as to her current income and expenses or the amount of her student loan payment. Without such evidence, the Debtor cannot establish the first *Brunner* factor.

The second *Brunner* factor requires the Debtor to show that the Debtor's "state of affairs is likely to persist for a significant portion of the repayment period of the student loans."

---

[10] The Complaint alleges that the Debtor's husband passed away in 2016 and that as a result of his death the Debtor no longer has access to the income or assets of her husband. The Debtor failed to produce any evidence that at the time of the Debtor's discharge, her husband's death was reasonably foreseeable. Accordingly, this Court cannot consider any allegations of undue hardship in connection therewith.

[11] As stipulated by the Parties, the Court took judicial notice of the Debtor's schedules, statements, and the proof of claim filed by Texas Guaranteed. These documents, together with the Debtor's testimony, were the only evidence presented at the trial.

*Brunner*, 831 F.2d at 396.  The Debtor failed to provide any evidence as to the repayment period of the subject loans.  Coupled with the Debtor's failure to provide any evidence as to her current state of affairs, the Debtor has failed to prove the second *Brunner* factor.

The third and final *Brunner* factor requires the Debtor to establish that she "has made good faith efforts to repay the loans."  *Brunner*, 831 F.2d at 396.  For purposes of the *Brunner* test, "[g]ood faith consists of the debtor's 'efforts to obtain employment, maximize income, and minimize expenses.'" *Educ. Credit Mgmt. Corp. v. Mosko* (*In re Mosko*), 515 F.3d 319, 324 (4th Cir. 2008) (quoting *O'Hearn v. Educ. Credit Mgmt. Corp.* (*In re O'Hearn*), 339 F.3d 559, 564 (7th Cir. 2003).  Good faith also includes pursuit of loan consolidation and repayment options. *Id.* at 326.

The Debtor did not present evidence on her efforts to obtain employment, maximize income, and minimize expenses.  Absent any evidence before it, the Court cannot find that the Debtor has attempted to obtain employment, maximize her income, and minimize her expenses.

The Debtor also failed to present sufficient evidence of attempts to pay the loan.  The Debtor testified that she took out the subject loan in 1988 and that she made payments on the loan until 2005.  In 2005, the Debtor lost her job and took a lower paying job.  The Debtor further testified that she started hardship deferments in 2005 or 2006, but did not provide any details on the terms of the hardship deferments or more recent efforts to restructure the student loan obligations.  Without any such evidence, the Court is unable to find that the Debtor has made good faith efforts to repay the debt owed to Texas Guaranteed.  As such, the Debtor failed to prove the third *Brunner* factor.

In light of the foregoing, the Debtor has failed to prove each of the three Brunner factors by a preponderance of the evidence.  Accordingly, the Debtor has failed to establish that

7

repayment of the debt owed by the Debtor to Texas Guaranteed constitutes an "undue hardship" pursuant to section 523(a)(8) of the Bankruptcy Code. As repayment of the debt does not constitute an undue hardship, the debt owed by the Debtor to Texas Guaranteed is nondischargeable.

A separate Order shall issue.

ENTERED:  September 18, 2018

       /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: 9/18/18